IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | CIVIL ACTION NO.: 4:15-CV-069-MPM-JMV |
| ) ) | **COMPLAINT** |
| POTTER & SIMS FOODS, INC, d/b/a SAVE-A-LOT. ) ) ) | **JURY TRIAL** |
| Defendant. ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e et seq, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex (female), and to provide appropriate relief to Sharon J. Bennett, who was adversely affected by such practices. As alleged with greater particularity in paragraphs ten (10) through twenty (20) below, Defendant Potter & Sims Foods, Inc., d/b/a Save-A-Lot ("Defendant" or "Save-A-Lot") subjected Bennett to harassment because of her sex (female) at one of its Mississippi stores. As a result of this discrimination, Bennett was constructively discharged.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1)("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the Greenville Division of the United States District Court for the Northern District of Mississippi.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Employer has continuously been a Mississippi corporation doing business in the State of Mississippi in the cities of Belzoni, Canton, Charleston, Clarksdale, Greenwood, Jackson, Kosciusko, and Winona, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Sharon Bennett filed a charge with the Commission alleging violations of Title VII by Defendant Employer.

7. On August 7, 2014, the Commission issued to Defendant Employer a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On August 25, 2014, the Commission issued to Defendant Employer a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the institution of the lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

10. Since approximately 2011, and on a continuing basis through and including May 2012, Defendant Employer has engaged in unlawful employment practices at its Canton, Mississippi store in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1) and 2000e-2(a).

11. Specifically, Defendant subjected Sharon Bennett, who worked at Defendant's Canton, Mississippi location, to routine unwanted, degrading and offensive sexual misconduct, culminating in an adverse employment action, based on her sex (female).

12. The unlawful sexual harassment was unwelcome and was carried out by Defendant's Store Manager, John Branson ("Branson"). Branson hired Bennett and imposed upon her the following conduct:

    a) Branson regularly propositioned Bennett for sex and made sexual comments to her, including requesting to "see her vagina";

    b) Branson graphically described lewd sexual acts to Bennett and suggested that she engage in them. Branson would tell Bennett that if she would let him "lick her," he would give her some days off work with pay;

    c) Branson would often ask Bennett to meet him at a hotel in Gluckstadt,

   Mississippi so he could "just lick her";

   d) Branson engaged in sexually graphic demonstrations and gestures, including telling Bennett he wanted to "look at her vagina to see how a white woman's vagina looks";

   e) Bennett also witnessed other female cashiers being sexually harassed by Branson.

13. The practices complained of in paragraph 12 continued on and through May 29, 2012. On May 29, 2012, Bennett was sexually assaulted by Branson. The assault included the following conduct:

   a) On May 29, 2012, after Bennett began her morning shift as a cashier, she was called into Branson's office;

   b) When Bennett entered Branson's office, he rose from his chair, walked passed Bennett, closed the door behind Bennett, and turned off the lights;

   c) Branson approached Bennett and pushed her with his hand up against his desk. Branson began kissing and licking her on her stomach and below her navel;

   d) Branson then began trying to unbutton Bennett's pants. He pulled her pants down along with her panties just above her knees, squatted

5

down, and started kissing her on the lower part of her side towards her hips, pelvic area, and her belly button;

e) Bennett tried to resist him and told him "no" repeatedly. Bennett tried to keep her clothes on, but Branson continued with his assault;

f) Branson then turned Bennett around and, with her back facing him, unbuttoned her pants and placed his finger inside her vagina;

g) During the assault, Bennett noticed that Branson had his penis out of his pants when she turned around. Observing this, Bennett screamed, "No!".;

h) Branson stopped momentarily and removed his finger from her vagina, giving Bennett a brief opportunity to adjust her clothing and to leave Branson's office.

i) As she was making her way out of the office, Branson gave Bennett her paycheck. After the assault, Bennett went to the ladies' room on the premises, contacted her cousin, Gracie Gongales ("Gongales"), via text message, and advised her of the assault.

j) Later that day, Bennett's cousin Gongales telephoned Defendant's President, Roy Sims ("Sims") to report the assault. Unable to reach Sims, Gongales left a telephone message asking Sims to call her.

>The next day, Sims returned the call. During the conversation with Sims, Gongales informed Sims of the assault and asked him to contact Bennett.

14. On the same day as the assault, Bennett filed a police report charging Branson with sexual assault with the Canton Police Department. A rape kit was conducted by the Mississippi Crime Lab, and evidence revealed Branson's DNA was on Bennett's person. Branson later pled guilty to a single charge of simple assault.

15. On May 30, 2012, Bennett informed Defendant Employer of both the sexual assault and the ongoing sexual harassment. Defendant failed to take prompt or effective preventive, corrective or remedial action.

16. Despite Bennett's complaint to Defendant Employer, Branson continued to work as store manager at Defendant's Canton, Mississippi location until at least September 2014.

17. Branson's conduct was open and notorious and Defendant, including its supervisors and managers, was aware of it.

18. Defendant did not have an effective Anti-Harassment policy as the policy failed to provide multiple avenues for reporting harassment, including contact information for a manager authorized to accept complaints of harassment.

19. Bennett's protests directly to Branson did not stop Branson's unlawful conduct.

20. Fearing that the harassment would continue and she would be the victim of another sexual assault, Bennett was forcibly constructively discharged.

21. The effect of the practices complained of in paragraphs ten (10) through twenty (20) above has been to deprive Bennett of equal employment opportunities and otherwise adversely affected her status as an employee because of her sex (female).

22. The unlawful employment practices complained of in paragraphs ten (10) through twenty (20) above were intentional.

23. The unlawful employment practices complained of in paragraphs ten (10) through twenty (20) above subjected Bennett to a hostile work environment based on her sex (female).

24. The unlawful employment practices complained of in paragraphs ten (10) through twenty (20) above were done with malice or with reckless indifference to the federally protected rights of Bennett.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Save-A-Lot, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in sexual harassment, and any other employment practices which discriminate on the basis of sex, and retaliation for opposition to such practices.

B. Order Defendant Save-A-Lot to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and for persons who oppose conduct prohibited by Title VII, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Save-A-Lot to make Bennett whole by providing, appropriate back pay, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Save-A-Lot to make Bennett whole by providing, as appropriate, compensation for past and future pecuniary losses resulting from the unlawful practices complained of in paragraphs ten (10) through twenty (20) above, relocation expenses, job search expenses and medical expenses in amounts to be determined at trial.

E. Order Defendant Save-A-Lot to make Bennett whole by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs ten (10) through twenty (20) above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant Save-A-Lot to pay to Bennett punitive damages for its malicious and reckless conduct described in paragraphs ten (10) through twenty (20) above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Date: June 8, 2015

RESPECTFULLY SUBMITTED,

P. David Lopez
General Counsel

James L. Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

C. EMANUEL SMITH  (MS Bar # 7473)
Regional Attorney

MARSHA RUCKER (PA Bar #90041)
Supervisory Trial Attorney
(205) 212-2046
marsha.rucker@eeoc.gov


**Equal Employment Opportunity Commission**
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 212-2045
Facsimile: (205) 212-2041